UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | ML 18-02814-AB<br>CV 19-01046 AB (FFMx)<br>CV 19-01047 AB (FFMx)<br>**CV 19-01048 AB (FFMx)** | Date: | April 16, 2019 |
|---|---|---|---|

| Title: | *In Re Ford Motor Co. DPS6 Powershift Transmission Products Liability Litigation*<br>*Tracy Matthews v. Ford Motor Company*<br>*David B. Picton v. Ford Motor Company*<br>***Wilbur Earl Hightower, Jr. et al v. Ford Motor Company*** |
|---|---|

Present: The Honorable    **ANDRÉ BIROTTE JR., United States District Judge**

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:**    [In Chambers] ORDER <u>**GRANTING**</u> MOTIONS FOR REMAND

     Before the Court are Motions for Remand filed by Plaintiffs in the three above-captioned cases. Defendant Ford filed oppositions and Plaintiffs filed replies. The Court heard oral argument on April 12, 2019. The Motions are **<u>GRANTED</u>**.[1]

---

[1] The motions, oppositions, and replies present almost identical arguments and appear to differ only on certain dates and the exact amounts of damages in issue. Surely there was a more efficient way to move for remand than by filing three separate but nearly-identical motions, all of which the Court had to read. For example, the three cases could have been expressly encompassed in a single motion, or Plaintiffs and Ford and could have agreed that Plaintiff would file a motion in one case, and that the other two cases would be

## I. BACKGROUND

Plaintiffs are all represented by the same counsel, and the salient facts governing the motions are similar in all material respects. Plaintiffs originally filed these actions in state court in 2015, asserting claims under California's Song-Beverly Act and the federal Magnuson-Moss Warranty Act ("MMWA" or "the Act") arising out of Ford's placement of allegedly defective DPS6 transmissions in Plaintiffs' Ford vehicles. According to Plaintiffs, these are the 3 oldest cases in the JCCP North dealing with DPS6 transmission cases. Litigation proceeded in state court, and on December 28, 2018, Plaintiffs filed a Motion to Consolidate these cases and to set them for trial in August 2019.

Ford did not respond to the Motion to Consolidate. Instead, on January 25, 2019, Ford removed these cases on the basis of diversity and federal question jurisdiction, and they were added to the *In Re Ford Motor Co. DPS6 Powershift Transmission Products Liability* MDL, Case No. 18-ml-02814 AB (FFMx). The instant motions for remand followed. Plaintiffs argue that the removals were untimely, and that Ford has not established by a preponderance of the evidence the $50,000 amount in controversy necessary to trigger federal question jurisdiction over the MMWA claims.

Ford concedes that its removal of these cases on the basis of diversity was untimely because it removed them more than 1 year after the cases were filed. *See* 28 U.S.C. § 1446(c)(1) (case cannot be removed on diversity grounds more than 1 year after it was filed). Accordingly, the only questions are whether Ford timely removed based on federal question jurisdiction derived from the MMWA claims, and if Ford has established the $50,000 amount in controversy to trigger federal jurisdiction over that claim.

## II. DISCUSSION

### A. Deadlines Governing Removal

A defendant may remove from state to federal court any civil action over which the district court would have had original jurisdiction. 28 U.S.C. § 1441(a). Federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A defendant may remove an action from state to federal court within 30 days of service of the initial pleading, or "if the case stated by the initial pleading is not removable . . . within 30 days after receipt by

---

bound by the result. The Court expects counsel to structure their motions in an efficient way. The demands of an MDL require parties to do so. The Court also notes that Plaintiffs' opening briefs lack tables of contents in violation of Local Rule 11-8. The Local Rules are not optional. Again, the Court expects counsel to comply with all applicable rules and may impose sanctions for future violations.

the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(1), (3). Accordingly, to determine whether Ford timely removed these cases, the Court must determine whether Ford removed them within 30 days of the filing of the complaints if there were removable, or within 30 days of otherwise ascertaining from a "paper" that they are removable.

## B. Subject Matter Jurisdiction Over MMWA Claims

The MMWA provides for a civil action for damages by a consumer damaged by the failure of a supplier, warrantor, or service contract to comply with warranty obligations. *See* 15 U.S.C. § 2310(d)(1). However, such a civil action cannot be brought in federal court "if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit." 15 U.S.C. § 2310(d)(3)(B).

The parties offer conflicting interpretations of the language "on the basis of all claims to be determined in this suit." Plaintiffs argue that this means that the amount in issue from every claim in the suit counts towards the amount in controversy. Ford argues that this clause refers only to all of the MMWA claims to be determined in the suit. The parties indicate that the Ninth Circuit has not decided this issue, and they cite cases from other circuits to support their interpretations.

The structure of the MMWA itself provides room to argue this point. Although the Act provides a substantive right of action to consumers, it does not specify the appropriate measure and type of damages that are available. Thus, courts look to state law to determine what remedies are available under the Act. *See Kelly v. Fleetwood Enterprises, Inc.*, 377 F.3d 1034, 1039 (9th Cir.) ("State law generally guides courts in determining whether punitive damages are available as a remedy for breach of warranty under the [Magnuson–Moss Warranty] Act."). As Judge Carter aptly pointed out, this means that state law remedies "of necessity inform the potential amount in controversy" for purposes of the MMWA. *Romo v. FFG Ins. Co.*, 397 F. Supp. 2d 1237, 1239 (C.D. Cal. 2005) (counting actual damages and two-time civil penalty under Song-Beverly towards the MMWA amount in controversy).

However, it is not clear that damages available under state law claims that are not grounded in warranty law—such as fraud claims—contribute to the amount in controversy for the MMWA. Thus, the Fifth Circuit can state *both* that "courts look to state law to determine the applicable measure of damages, which informs the amount in controversy under the MMWA," *and* that "damages for any pendent state-law claims should not be included to satisfy the jurisdictional amount." *Scarlott v. Nissan N. Am., Inc.*, 771 F.3d 883, 887–88 (5th Cir. 2014). Accordingly, it appears that, at a minimum,

all remedies available for state law warranty violations contribute to the amount in controversy applicable to MMWA claims.[2] Because such remedies satisfy the amount in controversy in these cases, the Court will not determine whether other remedies for non-warranty claims should also be included.

### C. Ford Untimely Removed These Cases.

Here, the original Complaints asserted claims under the MMWA and the Song-Beverly Act. And regardless, the Song-Beverly Act establishes the measure of damages for claims under the MMWA. Ford acknowledged as much in its Notices of Removal. *See, e.g., Matthews* Notice of Removal (Dkt. No. 1) ¶ 1("Based on the allegations set forth in the operative [FAC], the California Song-Beverly Act therefore provides the appropriate measure of damages available for determining the amount in controversy in this case pursuant to 15 U.S.C. § 2310(d)(3)."). The Song-Beverly Act authorizes actual damages and a civil penalty of up to two times the amount of actual damages. *See* Cal. Civ. Code § 1794(c). However, the original Complaints did not state specify an amount of damages, and no amount was apparent from the Complaints.

Thus, the question here is when, if ever, did Ford ascertain that the amount in controversy in the actions was $50,000 or more. Ford removed these cases on January 25, 2019. So, if Ford ascertained that the amount in controversy was satisfied more than 30 days prior—that is, before December 26, 2018—then its removals were untimely. Plaintiffs argue that Ford knew that the amount in controversy exceeded $50,000 months if not years before it removed these cases, and that removal was therefore not timely. Ford, by contrast, argues that the 30-day deadline was triggered by Plaintiffs' December 28, 2018 motion to consolidate and set trial, which made it apparent that substantial attorneys' fees would be at stake because the case would go to trial and because Mr. Kiesel, whose hourly rate is at least $1,100, would be trying the case. By that argument, the removal was timely.

Although the parties dispute whether attorneys' fees count towards the amount in controversy under the MMWA, the Court need not resolve this question. This is because the amount in controversy is satisfied based solely on the actual damages and two-times civil penalty available under Song-Beverly, and Ford ascertained this well before December 26, 2018.

Specifically, Plaintiffs argue that damages-related discovery they provided in 2015 and 2016[3] put Ford on notice that the amount in controversy exceeded $50,000. The fact

---

[2] The Magnuson–Moss Warranty Act expressly precludes recovery under the Act for personal injury, but this is not in issue here.
[3] The Court strongly admonishes Plaintiffs' counsel for submitting their voluminous

that Ford knew, based on this discovery, that the amount in controversy was satisfied is apparent from offers to settle that Ford sent to Plaintiffs thereafter, as follows:

- In *Matthews*, on January 12, 2017, Ford offered to settle for $66,001.00, consisting of reimbursement of $18,827.76 and consequential damages, plus a two-times civil penalty under Song-Beverly.

- In *Picton*, on April 25, 2017, Ford offered to settle for $55,000, which again comprised $17,919.60 paid or payable for the vehicle plus incidental and consequential damages, and a two-times civil penalty under Song-Beverly.

- In *Hightower*, on April 24, 2017, Ford offered to settle for $105,000 plus $70,000 in attorneys' fees. The $105,000 was comprised of $29,779.20 paid or payable for the vehicle and consequential and incidental damages, plus a two-times civil penalty under Song-Beverly.

In each instance, Ford made an offer in 2017 to settle based on specific damages calculations and the two-times civil penalty recoverable under Song-Beverly. Each offer exceeded $50,000. Ford argues that its settlement offers are not "other paper" for purposes of triggering the removal deadline because those offers were *sent by* Ford, not *received by* Ford. However, Plaintiffs' discovery responses count as "other paper," and Ford does not dispute that Plaintiffs' responses were sufficient to inform Ford of the amount in controversy, and that Ford's settlement offers – all of which exceeded $50,000 – corresponded to that information. Ford therefore "ascertained" from some paper that the amount in controversy exceeded $50,000 long before December 26, 2018. Accordingly, Ford untimely removed these cases, so the Court **GRANTS** the motions to remand.[4]

### D. The Court Awards Plaintiffs Their Attorneys' Fees and Costs.

"An order remanding the case may require payment of just costs and any actual

---

discovery responses in their entirety, instead of just the relevant pages of it. Likewise, Plaintiffs did not direct the Court to specific discovery responses therein. The Court has neither the time nor the inclination nor the obligation to search the submissions for the relevant material. The Court expects better of all counsel. Going forward, the Court may disregard insufficiently referenced materials or impose sanctions.

[4] In the alternative, Plaintiffs state they wish to dismiss their Magnuson-Moss Act claims. Had the Court found the removals timely, it would have granted Plaintiffs' motions to dismiss their Magnuson-Moss Act claims, declined to exercise supplemental jurisdiction over the remaining state law claims, and remanded these cases for lack of subject matter jurisdiction.

expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The statute does not provide guidance on when a fee award is warranted. But, the Supreme Court has held that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). "When a court exercises its discretion in this manner, however, its reasons for departing from the general rule should be 'faithful to the purposes' of awarding fees under § 1447(c)," which include "reduc[ing] the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff." *Id.*

Here, the Court is not persuaded that Ford had an objectively reasonable basis for seeking removal. Ford's removal on diversity grounds was plainly untimely and was therefore unreasonable. Nor did Ford have an objectively reasonable basis for removal based on federal question jurisdiction. As noted above, Ford ascertained that the $50,000 amount in controversy under the MMWA was satisfied sometime before if offered settlements in excess of that amount in the first half of 2017. Ford removed the action only in January 2019—1.5 to 2 years later.

Furthermore, Ford's argument that it ascertained that the amount was satisfied only on December 28, 2018, when it became apparent that substantial attorneys' fees would be at stake because the case would go to trial and because Mr. Kiesel would be trying the case, is disingenuous at best. In removing the vast majority of cases in this MDL, Ford had to prove that more than $75,000 was at stake to establish diversity jurisdiction. Ford argued that plaintiff's counsel, the Knight Law Group (the firm representing Plaintiffs herein), routinely sought more than $100,000 in attorneys' fees under the Song-Beverly Act for cases like this. Ford took this position based solely on the claims alleged in the complaints, not on some sudden revelation that the cases would go to trial, or that counsel with a high billing rate would try the cases, or its receipt of an identifiable paper that reflected the same. And in its Order denying the first set of remand motions, the Court relied in part on $100,000 in fees being in issue to find the amount in controversy had been satisfied. *See* 09/10/2018 Order Denying Test Motions For Remand (Dkt. No. 119) 6:16-20. The amount in controversy under the MMWA is only $50,000, so it stands to reason that the amounts put in issue by the Song-Beverly claim—actual damages, a two-time civil penalty, and attorneys' fees—would satisfy this amount. As stated above, Ford's 2017 settlement offers establish that the amount in controversy was satisfied. The Court therefore finds that Ford did not have an objectively reasonable basis for removing these cases either when or for the reason it did.

In the alternative, even if Ford did have an objectively reasonable basis for removal, the Court finds that unusual circumstances warranting an award of fees and costs exist in this case. As the Supreme Court stated in *Martin*, Congress authorized an award of fees to deter defendants from using removal to delay litigation and impose costs

on the plaintiff. Here, Ford removed these cases—the 3 oldest cases in the JPPC North—only after litigating them in state court for 3-4 years, and only after Plaintiffs sought a trial date for 8 months later. In light of the foregoing, the Court finds that the purposes of the fee provision would be served by requiring Ford to pay Plaintiffs their fees.

## III. CONCLUSION

For the foregoing reasons, the Motions to Remand are **GRANTED** . The following cases are **REMANDED** to the state courts from which they were removed:

- *Tracy Matthews v. Ford Motor Company*, CV 19-01046 AB (FFMx)
- *David B. Picton v. Ford Motor Company*, CV 19-01047 AB (FFMx)
- *Wilbur Earl Hightower, Jr. et al v. Ford Motor Company*, CV 19-01048 AB (FFMx)

Plaintiffs are awarded their attorneys' fees incurred in connection with the Motions for Remand.

**IT IS SO ORDERED.**